CITY of FORT SMITH, Arkansas *v.*
HOUSING AUTHORITY of the CITY of
FORT SMITH, Arkansas

73-222                                    506 S.W. 2d 534

Opinion delivered March 18, 1974

*Daily, West, Core & Coffman,* for appellant.

*Hardin, Jesson & Dawson,* for appellee.

Amicus curiae for Arkansas Municipal League by: *Glenn G. Zimmerman* and *William G. Fleming.*

Amicus curiae for Ark. Chapter, National Association

Housing & Redevelopment Officials by: *Laser, Sharp, Haley, Young & Boswell, P.A.,* by: *David B. Bogard.*

FRANK HOLT, Justice. By a declaratory judgment action, the appellant city sought to establish that it was empowered by Ark. Stat. Ann. § 19-1042 et. seq. (Supp. 1973), Act 266 of 1971, to adopt an ordinance to amend the procedure, Ark. Stat. Ann. § 19-3006 (Repl. 1968), Act 77 of 1943, for the filling of vacancies on the local Housing Authority Board of Commissioners as well as the right to increase the size of the Board. Further, appellant averred that the action of the Housing Authority in filling the vacancy after the adoption of the ordinance was void. The trial court held that the ordinance enacted by the city, pursuant to the provisions of § 19-1042 et. seq., known as the Home Rule Act, was void since it did not repeal § 19-3006. Appellant first contends for reversal that the "trial court incorrectly construed Act 266 of the 1971 Acts of Arkansas as not delegating the authority to the city to establish a procedure for filling vacancies on the Board of Commissioners of the Housing Authority." We agree with the trial court although we first resolve the issue on a constitutional basis which was presented by the briefs and in oral argument. We do so, even though the issue was not raised at trial, because of the manifest public interest. *Rainwater* v. *Haynes,* 244 Ark. 1191, 428 S.W. 2d 254. Furthermore, we recently considered the constitutional issue in *Nahlen* v. *Woods,* 255 Ark. 974. 504 S.W. 2d 749 (1974). Our recognition of the impact of our decision in *Nahlen* is consistent with our approach to such a matter in *Commissioner of Labor* v. *Danco Construction Co.,* 226 Ark. 797, 294 S.W. 2d 336 (1956).

§ 19-3006 provides that when a vacancy occurs on the Board of Commissioners of a municipal Housing Authority, the Commissioners shall designate a successor to fill the vacancy subject to confirmation by the municipal governing body. Further, upon the expiration of a Commissioner's appointment, he shall hold office until his successor is selected by the Board and approved by the city. Appellant, in the belief that it was acting within the enabling authority of the Home Rule Act, enacted an ordinance in which appellant's governing body found that the affairs of the Housing Authority were so interrelated with the affairs of the appellant city as

to require that vacancies on the Housing Authority Board should be filled in the same manner as are other municipal board and departmental vacancies. The ordinance, accordingly, provided that the vacancies would be filled by appointment by the City Administrator with the approval of the governing body. Despite the ordinance, the term of one of the Commissioners having expired, the Housing Authority Board reappointed the Commissioner to a new term in accordance with the procedure prescribed in § 19-3006. The appellant's governing body would not approve the appointment and named another individual pursuant to the ordinance which it had enacted in accordance with its asserted authority to do so by the 1971 Home Rule Act. § 1 of that Act, codified as § 19-1042, provides:

> Any city of the first class is hereby authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs including but not limited to the power to tax.

§ 7 (uncodified) of that Act is:

> Any existing state statute which now limits or prohibits the exercise of a function or a legislative power of a city of the first class pertaining to its municipal affairs is hereby repealed upon the passage of an ordinance or a resolution by a city of the first class which provides for, regulates, controls or otherwise affects its municipal affairs now limited by that state statute. . . .

The appellant city does not dispute, and correctly so, that the original Housing Authority Act (298 of 1937), as amended, creating the various local Housing Authorities, is a general law. However, appellant relies on § 7, *supra,* of the Home Rule Act, as clearly expressing the intention of the legislature to repeal all statutes which pertain to municipal affairs whenever the city governing body activates the process by the enactment of an appropriate city ordinance. In other words, appellant says the 1971 Act, being a general law, repealed previous legislation by empowering cities of the first class with the authority, when they so desire, to legislate with reference to the appointment procedure of Housing Authority

Board members. Consequently, when the city adopted its ordinance, it was not enacting any legislation contrary to the general law on the subject.

Admittedly, as indicated, the Housing Authority Act is a general law. Any delegation of authority to legislate upon that subject to appellant city is patently prohibited by Ark. Const., Art. 12, § 4, (1874), which provides, *inter alia*:

> No municipal corporation shall be authorized to pass any law contrary to the general laws of the state. . . .

Most recently we had occasion to consider the subject of the legislature delegating its plenary powers to municipal authorities. In *Nahlen v. Woods, supra,* we held that our state is a legislative rather than a constitutional home rule state and, therefore, our legislature possesses plenary power over municipalities. There it was contended on appeal that a city governing body, pursuant to the Home Rule Act, could properly repeal by ordinance two 1971 acts of the general assembly. These acts provided for the imposition of court costs to support a county law library and a law library building. The ordinance attempted to divert the collection of these court costs into the municipal law library book fund which would be administered by a municipal law library board. In nullifying the city ordinance, we said:

> In the first place, the legislature is prohibited by our constitution from delegating such authority of repeal. 'No municipal corporation shall be authorized to pass any law contrary to the general laws of the State. . . . ' (citing Art. 12, § 4, *supra*, and cases)

Therefore, in the case at bar, it is constitutionally impermissible to interpret the Home Rule Act to confer upon a city the authority to repeal by an implementing ordinance a general law and substitute its own method of filling vacancies on the Housing Authority Board.

Further, even if the ordinance was not constitutionally defective, the Housing Authority is not a matter pertaining to "municipal affairs" within the Home Rule Act. The definition of "municipal affairs," for the purpose of the Act, is

found in § 19-1043. It specifically excludes " . . . matters coming within the police power of the state including minimum public health, pollution and safety standards."

A Housing Authority is an agent of the state dealing with public health standards and falls squarely within the traditional police powers of the state. A city Housing Authority does not operate within the scope of "municipal affairs" (i.e., those affecting, germane to or concerning the municipality and its government) as distinguished from those state affairs excepted in the Home Rule Act. § 19-3002 sets forth the declaration of the necessity of the Housing Authority Act and clearly manifests a statewide rather than a municipal concern:

> That there exists in the *State* insanitary or unsafe dwelling accommodations . . . that within the *State* there is a shortage of safe or sanitary dwelling accommodations . . that the aforesaid conditions cause an increase in and spread of disease and crime and constitute a menace to the health, safety, morals and welfare of the residents of the *State* and impair economic values. (Emphasis added.)

Although a Housing Authority is authorized in a municipality (as well as in a county or by combinations), the benefit of its existence obviously spreads past the city (or county). In *Hogue* v. *Housing Authority of North Little Rock*, 201 Ark. 263, 144 S.W. 2d 49 (1940), we held the Housing Authority Act constitutionally valid. In doing so, we quoted with approval from *Los Angeles* v. *Dockweiler*, 14 Cal. 2d 437, 94 Pac. 2d 794 (1939), where that court found:

> Both reason and authorities support us that the proposed elimination of slums and the erection of safe and sanitary low rent dwelling units for persons of the prescribed income will do much to advance the general welfare and to protect the public safety and morals and are in fact and in law public purposes.

Powers of the Authority are vested in its Commissioners. No Commissioner of a city Authority may be an officer or employee of the city. §§ 19-3005, 19-3007. A city Housing

Authority constitutes a public body corporate and politic exercising essential governmental functions, having perpetual succession, the power to sue and be sued, to enter into contracts in exercise of its powers, to exercise the power of eminent domain, "to cooperate with the city, the county, the State or any political subdivision thereof in action taken" within the scope of its primary functions. It is in essence a separate Authority created to cooperate with the city or county as the case may be.

Even when the power of appointment of Housing Authority members is vested in city officials (here the city is given the veto power as to each appointment), it has been held that however intimate the connection between the city and the authority may be, the latter is created for the performance of a state function, separate and apart from the municipality in which it exists. *Schlobohm* v. *Municipal Housing Authority,* 188 Misc. 318, 62 N.Y. S. 2d 71 (1946).

For the foregoing reasons, we hold that a Housing Authority is not a municipal affair. Therefore, we must also consider the Fort Smith ordinance as being unauthorized by the Home Rule Act.

Affirmed.